

ORDERED in the Southern District of Florida on November 27, 2023.

Robert A. Mark, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                  Case No. 22-19725-RAM

FRANK JESUS GARCIA,                                     Chapter 13

    Debtor.
_____/

### ORDER SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION

The debtor in this chapter 13 case owns two vehicles. He valued and stripped down the secured debt on one vehicle and his plan includes a substantial reduction in the interest rate for both vehicle debts. As a result, his plan provides for monthly payments to both lenders that are less than half of what he was obligated to pay on the petition date under the loan agreements. The chapter 13 trustee objects to confirmation of the debtor's plan. To rule on the objection, the Court must answer the following question: In calculating projected disposable income, may an above-median income chapter 13

1

debtor deduct from current monthly income (a) the average future monthly payments to the secured creditors based upon the original, unmodified contract, or (b) the greater of the IRS Local Standard and the amount that the debtor is paying on the reduced secured debt in his plan?

The answer affects this debtor's projected disposable income and, therefore, the amount he must pay to general unsecured creditors under § 1325(b)(1)(B) of the Bankruptcy Code. This sounds easy, right? The debtor's reduced expenses should be the relevant figures because the reduction in his actual vehicle expenses will increase his actual projected disposable income for the benefit of his unsecured creditors. Not so fast. Determining the debtor's allowable vehicle expenses requires an analysis of several provisions added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). This exercise may be likened to driving a car with four different-sized tires. Whichever road you choose will be bumpy, so buckle up.

## Factual and Procedural Background

The Court conducted a hearing on July 18, 2023 to consider confirmation of the Third Amended Chapter 13 Plan of Reorganization [DE #90] filed by Frank Jesus Garcia (the "Debtor"). The chapter 13 trustee (the "Trustee") raised several objections to confirmation in the Trustee's Notice of Deficiency for Confirmation and Recommendation [DE #95]; however, the Trustee limited her argument at the July 18th hearing to the legal issue described in the introduction to this Order.[1] Restating the issue: In calculating

---

[1] The Trustee has not waived her other objections to confirmation of the Debtor's plan; however, the Trustee's additional objections are not addressed in this Order.

2

projected disposable income, is the Debtor entitled to deduct vehicle payments in the amount of the monthly contractual payment in effect on the petition date, or must he limit his deduction to the lower monthly payments he proposes to pay in his plan?  The Court ordered briefing on the legal issue and has reviewed the memoranda filed by the Debtor and the Trustee.  *See* DE #103 and 104.  On July 25, 2023, the Debtor filed his Fourth Amended Chapter 13 Plan of Reorganization [DE #100] (the "Plan") and the Trustee filed the Trustee's Notice of Deficiency and Recommendation [DE #105].  The Court held a further hearing on August 15, 2023 to consider confirmation of the Plan and took this matter under advisement.

Here are the additional facts relating to the two vehicles:  On December 21, 2022 (the "Petition Date"), the Debtor filed a voluntary chapter 13 petition.  On June 14, 2023, the Debtor filed an Amended Official Form 122C-1 Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period [DE #75] ("Form 122C-1"), which calculated the Debtor's current monthly income, as averaged from the six-month period prior to the Petition Date, at $9,100.00 per month.  Because that amount, multiplied by twelve, is greater than the median family income for the state of Florida for a family of five, the Debtor's disposable income is determined in accordance with § 707(b)(2) of the Bankruptcy Code (otherwise known as the means test) and the applicable plan commitment period is five (5) years.  *See* 11 U.S.C. §§ 1325(b)(3)-(4).  Also on June 14, 2023, the Debtor filed an Amended Official Form 122C-2 Calculation of Your Disposable Income [DE #76] ("Form 122C-2"), which calculated his monthly disposable income at negative $118.00.  To arrive at that figure, the Debtor subtracted total monthly deductions in the amount of $9,218.00 from his $9,100.00 in current monthly income.  The Trustee

3

objects to the Debtor's calculations used to arrive at his total monthly deductions, most importantly, his vehicle expenses.

Under the Plan, the Debtor proposes to pay $598.63 per month for months 37 through 60 to general unsecured creditors, for a total of $14,367.12. According to the Trustee, the total amount of allowed general unsecured claims totals $41,209.26. As noted in the introduction, the Trustee objects to confirmation of the Plan arguing that the Debtor may only deduct from current monthly income the actual vehicle expenses he is paying in the Plan, thereby increasing the amount available to pay to unsecured creditors. The objectionable vehicle expenses relate to a 2016 Cadillac Escalade and a 2015 Ford F150.

*2016 Cadillac Escalade*

American Credit Acceptance, LLC ("American Credit") filed proof of claim no. 8 in the amount of $28,663.43 secured by a 2016 Cadillac Escalade (the "Cadillac"). The proof of claim asserts that the value of the Cadillac, and the amount of American Credit's secured claim, is $28,633.43. The proof of claim asserts an annual interest rate of 24.10%. However, pursuant to the Court's Order Sustaining Debtor's Objection to Claim No. 8 Filed by American Credit Acceptance, LLC [DE #59], the Court allowed American Credit's secured claim in the amount of $28,633.43 but reduced the annual interest rate to 6.25% "for a total amount of $33,413.46, to be paid over the life of the Plan." *See* DE #59 at ¶ 1. The Plan provides for payment of this amount over 60 months, at $556.90 per month. Because the Debtor was able to substantially reduce the interest rate, the monthly Plan payment is less than one-half of the monthly contract payment of $1,194.68

in effect on the Petition Date. As of the Petition Date, there were only 48 payments remaining under the contract.

On Form 122C-2 [DE #76], the Debtor deducts the contract payment of $1,200 per month for the Cadillac. He argues that the full amount of the payment under the loan agreement, $1,194.00 per month, may be deducted from his current monthly income pursuant to § 707(b)(2)(A)(iii)(I). As stated earlier, in the Plan, the Debtor is paying the full amount of the secured claim as filed but at a reduced interest rate of 6.25%. The reduced interest rate results in monthly payments of only $556.90 for 60 months. Therefore, using the contract rate substantially reduces the projected disposable income yielding a number more than $600 per month lower than his actual income.

The Trustee argues that the Debtor is only permitted to deduct the IRS standard deduction of $588.00 per month for the Cadillac pursuant to § 707(b)(2)(A)(ii)(I). Therefore, the Trustee argues that the Debtor is deducting an additional $612.00 per month from his disposable income ($1,200 - $588 = $612).

Alternatively, the Trustee argues that the Debtor may only deduct the *actual* payments on the secured claim as provided in the Plan from his monthly disposable income and, therefore, the Debtor is only permitted to deduct $556.90 per month for the Cadillac pursuant to § 707(b)(2)(A)(iii)(I). If this number is used, the Debtor is deducting an additional $643.10 per month from his disposable income than he is *actually* paying for the Cadillac through the Plan ($1,200 - $556.90 = $643.10).

The Trustee also argues that, even if the Court finds that the Debtor may deduct the contract payment from his monthly disposable income pursuant to § 707(b)(2)(A)(iii)(I) despite the lower, actual monthly payment proposed in the Plan, the Debtor is still

5

deducting the incorrect amount from his monthly disposable income based upon the number of post-petition payments remaining on the loan. This alternative argument is discussed in further detail later in this Order.

*2015 Ford F150*

Westlake Services, LLC ("Westlake") filed proof of claim no. 6 in the amount of $43,650.15 partially secured by a 2015 Ford F150 (the "Ford"). The proof of claim asserts that the value of the Ford, and the amount of Westlake's secured claim, is $21,440, leaving an unsecured balance of $22,210.15. The proof of claim asserts an annual interest rate of 22.29%. The monthly contract payment was $832.75 beginning September 20, 2018 through September 20, 2024. As of the Petition Date, there were only 20 payments remaining under the contract.

On Form 122C-2 [DE #76], the Debtor deducts the contract payment of $832 per month for the Ford from his current monthly income pursuant to § 707(b)(2)(A)(iii)(I). However, in the Plan, the Debtor provides that the value of the Ford, and the amount of Westlake's secured claim, is $20,000 with an interest rate of 6.25%.[2] The Plan, therefore, provides that the total amount of this secured claim to be paid through the Plan is $23,339.40, with monthly payments of only $388.99 for 60 months.

The Trustee argues that the Debtor is only permitted to deduct the IRS standard deduction of $588.00 per month for the Ford pursuant to § 707(b)(2)(A)(ii)(I). Therefore, the Trustee argues that the Debtor is deducting an additional $244.00 per month from his disposable income ($832 - $588 = $244).

---

[2] Unlike the Cadillac, there is no order on the docket sustaining a claim objection and reducing the interest rate applicable to the debt secured by the Ford. The interest rate is reduced for the first time in the Plan.

6

Alternatively, the Trustee argues that the Debtor may only deduct the *actual* payments on the secured claim as provided in the Plan from his monthly disposable income and, therefore, the Debtor is only permitted to deduct $388.99 per month for the Ford pursuant to § 707(b)(2)(A)(iii)(I). If this number is used, the Debtor is deducting $443.01 more per month from his disposable income than he is *actually* paying for the Ford through the Plan ($832 - $388.99 = $443.01).

Like her argument about the Cadillac deduction, the Trustee adds an alternative argument objecting to the Ford expense deduction based upon the number of post-petition payments remaining on the loan. Specifically, she argues that even if the Court finds that the Debtor may deduct the prepetition monthly contract payment from his disposable income under § 707(b)(2)(A)(iii)(I) despite the lower, actual monthly payment proposed in the Plan, the Debtor is still deducting the incorrect amount from his monthly disposable income. This alternative argument will likewise be addressed in further detail later in this Order.

## **Analysis**

The issue is whether an above-median income chapter 13 debtor may deduct monthly expenses based on the secured debt payments in existence as of the petition date to determine projected disposable income, or must the debtor limit the deduction to the greater of the IRS Local Standard and the monthly payment proposed in a chapter 13 plan. To resolve the issue, the Court must first interpret the phrase "amounts scheduled as contractually due" in § 707(b)(2)(A)(iii)(I) of the Bankruptcy Code, a provision applicable to above-median chapter 13 debtors in calculating secured debt payments for purposes of determining disposable income. Second, even if "amounts scheduled as

7

contractually due" means that the prepetition contract amount may be used in Form 122C-2 to calculate "disposable income," should the reduced plan payments (or IRS Local Standard amount) be used to calculate "projected disposable income" under § 1325(b)(1)(B) of the Bankruptcy Code?

In interpreting these provisions of the Bankruptcy Code, this Court agrees that this "frequently litigated BAPCPA issue is yet another legal conundrum produced by Congress' injecting into the chapter 13 projected disposable income test certain aspects of the chapter 7 means test for determining abuse." *In re Hoss*, 392 B.R. 463, 464, 66 (Bankr. D. Kan. 2008). Neither the Supreme Court nor the Eleventh Circuit has directly ruled on the issue, and the bankruptcy courts that have ruled on the issue are divided.

It's time to explore the bumpy terrain of the statute. Section 1325(b)(1)(B) of the Bankruptcy Code provides that if the trustee or an unsecured creditor object to confirmation of a chapter 13 plan, the Court may confirm the plan if, as of its effective date, the plan pays all the debtor's projected disposable income to be received in the applicable commitment period to general unsecured creditors. 11 U.S.C. § 1325(b)(1)(B).[3] Section 1325(b)(2) defines "disposable income" as "current monthly income," a defined term under § 101(10A) and determined as of the petition date, "less amounts reasonably necessary to be expended" for the maintenance and support of the debtor and their dependents. 11 U.S.C. § 1325(b)(2). For above-median income debtors, the amount "reasonably necessary to be expended" is "determined in accordance with subparagraphs (A) and (B) of § 707(b)(2)." 11 U.S.C. § 1325(b)(3).

---

[3] "This requirement in bankruptcy parlance is referred to as the 'best efforts test' because it requires chapter 13 debtors to devote all of their projected disposable income towards repayment of their creditors during the applicable mandated plan commitment period." *Kramer v. Bankowski (In re Kramer)*, 505 B.R. 614, 620 (B.A.P. 1st Cir. 2014).

8

Section 707(b)(2)(A)(iii) provides that the debtor's average monthly payments for <u>secured</u> debts is calculated as "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months" following the petition date, plus any additional payments to be made to those secured creditors to retain possession of the property securing the debts. 11 U.S.C. § 707(b)(2)(A)(iii).  At issue in this case is what "amounts scheduled as contractually due" means in the context of a chapter 13 plan and the calculation of the debtor's projected disposable income under § 1325(b)(1)(B).

Several courts start and end with the plain language of § 707(b)(2)(A)(iii) and conclude that "scheduled as contractually due" refers to "payments owed under a contract at the time of filing the petition, whether or not they are actually paid." *In re Allen*, 2008 Bankr. LEXIS 364, *9 (Bankr. D. Kan. Feb. 15, 2008) (citing cases in support and holding that "the means test is a snapshot in time, meant to assess a debtor's financial status as of the date the petition is filed."); *but see In re Hoss*, 392 B.R. at 466 (explaining that the same cases cited in *Allen* are chapter 7 cases involving the post-petition surrender or repossession of the collateral securing the debt where the U.S. Trustee seeks to dismiss the case as presumptively abusive and applies the chapter 7 means test). This "full deduction," mechanical approach follows the reasoning first adopted in *In re Walker*, 2006 Bankr. LEXIS 845, 2006 WL 1314125 (Bankr. N.D. Ga. 2006).  As that court explained:

> The common meaning of 'as contractually due' is that the debtor is legally obligated under the contract, in this case, a promissory note, to make a payment in a certain amount, with a certain amount of interest, for a set number of months into the future.  Accordingly, payments that are 'scheduled as contractually due' are those payments that the debtor will be required to make on certain dates in the future under the contract.

*Id*., 2006 Bankr. LEXIS 845 at *9.

9

The full deduction approach has flaws. As one court observed, allowing debtors to deduct phantom payments that they are not actually paying in their plans from their current monthly income (ultimately lowering the amount of disposable income available for payment to unsecured creditors) "injects a certain alternative reality into a process that is supposedly designed to determine what debtors are able to pay to unsecured creditors." *In re Hoss*, 392 B.R. at 468. Further, this approach does not give meaning to the words "as of the effective date" used in § 1325(b)(1). As the *Hoss* Court explained, these words require that disposable income in a chapter 13 case be determined when the plan is confirmed, not when the petition is filed." *Id*.

On the other side of the issue, "a growing number of courts contend that the phrase, viewed in a chapter 13 context, really refers to the amounts the debtor intends to pay under the plan and is determined at confirmation." *Id*. at 467 (citing cases in support). This "actual payment deduction," forward-looking approach disallows a secured debt payment deduction in calculating projected disposable income with respect to collateral that has been or will be surrendered, secured debts that have been or will be crammed down, or liens that have been or will be avoided. *Id*. at 469 and n.26 (citing cases in support). As one court has explained:

> The term 'contractually due,' however, does not carry the same meaning in a chapter 13 case as in a chapter 7 case. The chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor.

*In re McPherson*, 350 B.R. 38, 46 (Bankr. W.D. Va. 2006).

In rejecting the full deduction approach in *Hoss*, Judge Nugent observed that the courts permitting full deduction regardless of future reality focus only on § 707(b)(2) and

10

ignore the language of § 1325(b). Thus, courts following the actual payment deduction approach explain "that the date upon which disposable income is to be projected is the effective date of the plan (generally the confirmation date) and not the filing date (as would be the case in a chapter 7 case under § 101(10A) and § 707(b)(2)(A)(iii)(I))." *In re Hoss*, 392 B.R. at 470. Therefore, because the effective date of the plan is utilized in determining projected disposable income, the courts hold that they must consider the contract between the debtor and the creditor as it has been or will be altered by the chapter 13 plan. *Id*. ("They take a 'snapshot' of the above-median debtor's condition, not at the date of the petition, but at the effective date of the plan."). And because a chapter 13 debtor's confirmed plan is a new contract with the creditors, the debtor may only deduct secured debt payments from current monthly income to the extent the debtors are treating the secured claims in the plan. *Id*.

The actual payment deduction approach makes sense, but it does face some strong statutory obstacles. Although § 1325(b)(1) makes clear that a debtor's disposable income should be projected as of the effective date of the confirmed chapter 13 plan, "one feels a little stretched by the interpretation of the 'scheduled as contractually due' language as arising from the plan and not the original debt instrument." *Id*. "Equally troubling is the apparent conflict between § 1325(b)(1)'s use of 'effective date' as the time to determine disposable income and § 707(b)(2)(A)(iii)(I)'s use of the words 'following the date of the petition' as the time to determine the average monthly payments on secured debt." *Id*.

The tension here is between the statutory words, which can certainly be interpreted to allow the full deduction approach, and the clear Congressional intent to require chapter

11

13 debtors to pay what they can to their unsecured creditors. With conflicting case law in the rear-view mirror and a strong view on which road ahead to take, this Court is inputting the forward-looking line of cases into the GPS and adopting the "actual payment" approach.

The Court acknowledges that it takes some twisting and pushing to plug the actual plan payment amount into a line item that § 707(b)(2)(A)(iii)(I) defines as "amounts scheduled as contractually due." However, even if the prepetition monthly contract amount is the correct figure to use in Form 122C-2, that does not end the analysis in the Debtor's favor. That's because Form 122C-2 determines "disposable income," but the Bankruptcy Code still requires that, on the effective date, the plan pays unsecured creditors all of a debtor's "*projected* disposable income." 11 U.S.C. § 1325(b)(1) (emphasis added).

So, the question that remains is how to calculate projected disposable income once a debtor's disposable income is determined in Form 122C-2. One alternative, the so-called mechanical approach, calculates projected disposable income by simply multiplying the disposable income by the number of months in the plan. An alternative approach decouples disposable income from projected disposable income when the actual plan payments are less than the amounts used in Form 122C-2.

Prior to 2010, several courts concluded that the statute constrained them to adopt the mechanical approach. *See, e.g., Maney v. Kagenveana (In re Kagenveana)*, 541 F.3d 868 (9th Cir. 2008); *In re Marshall*, 407 B.R. 1 (Bankr. D. Mass. 2009). However, the analysis was changed dramatically in 2010 by the Supreme Court's decision in *Hamilton v. Lanning*, 560 U.S. 505 (2010).

In *Lanning*, the Supreme Court focused on the income side of the projected disposable income equation. *Lanning*, 560 U.S. at 509-10. In the six-month period preceding the petition date, a chapter 13 debtor had received a one-time buyout from her former employer, which greatly inflated her gross income during that period. *Id*. at 511. As a result of the one-time buyout, the debtor's current monthly income, as calculated using a prior version of Form 122C-1, exceeded the median income for a family of one in Kansas and resulted in a monthly "disposable income" of $1,114.98. *Id*. However, on Schedule I, the debtor reported actual income from her new job, which was below the state median income and, when reduced by actual monthly expenses reported on Schedule J, resulted in an actual monthly "disposable income" of only $149.03. *Id*.

The debtor in *Lanning* proposed a plan committing her actual disposable income to the payment of creditors and the chapter 13 trustee objected to confirmation of said plan. *Id*. The trustee argued that the proper way to calculate projected disposable income was to simply multiply disposable income, as calculated on the predecessor of Official Form 122C-1, by the number of months in the commitment period. *Id*. at 511-12. The Supreme Court identified this approach as the "mechanical approach." *Id*. The debtor agreed that the method outlined by the trustee should be determinative in most cases but argued that in exceptional cases, where significant changes in a debtor's financial circumstances are known or virtually certain, a bankruptcy court has discretion to make an appropriate adjustment. *Id*. at 513. The Supreme Court identified this approach as the "forward-looking approach." *Id*.

In resolving a split among the bankruptcy courts regarding which approach to apply, the Supreme Court adopted the "forward looking approach" and held that

13

"[c]onsistent with the text of § 1325 and pre-BAPCPA practice, . . . when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income <u>or expenses</u> that are known or virtually certain <u>at the time of confirmation</u>." *Id*. at 524 (emphasis added). In considering the ordinary meaning of the undefined term "projected" in § 1325(b)(1), the Supreme Court explained that "in ordinary usage future occurrences are not 'projected' based on the assumption that the past will necessarily repeat itself." *Id*. at 513. "While a projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome." *Id*. at 514. The Supreme Court also explained that "Congress did not amend the term 'projected disposable income' in 2005, and pre-BAPCPA bankruptcy practice reflected a widely acknowledged and well-documented view that courts may take into account known or virtually certain changes to debtors' income or expenses when projecting disposable income." *Id*. at 517.[4]

Although *Lanning* did not address the specific issue in this case, the Court finds its reasoning and holding strongly supportive, if not controlling, in adopting the forward-looking approach for secured expenses that are known at confirmation to be lower than the contractual rate in place on the petition date. Further support is gleaned from the clear Congressional intent that chapter 13 debtors pay what they can to general unsecured creditors. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011) ("Congress adopted the means test . . . to help ensure that debtors who *can* pay creditors *do* pay them.") (emphasis in original); *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239,

---

[4] *In re Hoss*, 392 B.R. at 471 and n.37 (Discussing the Tenth Circuit Bankruptcy Appellate Panel's decision in *Lanning*, 380 B.R. 17 (10th Cir, BAP 2007), the *Hoss* Court held that "[a]lthough *Lanning* involved the income side of the disposable income equation, the same rationale may be applied to projecting expenses.").

1246 (11th Cir. 2008) ("Congress . . . intended . . . that the debtor repay his creditors to the extent of his capability during the Chapter 13 period.") (internal quotations and citation omitted).

*Lanning*'s importance in calculating projected disposable income when plan payments are lower than the means test (Form 122C-2) was discussed at length by the Bankruptcy Appellate Panel for the First Circuit in *Kramer v. Bankowski (In re Kramer)*, 505 B.R. 614, 620 (B.A.P. 1st Cir. 2014). After noting the decisions in *Kagenveama* and *Marshall*, the *Kramer* Court held that "post-*Lanning*, th[e] mechanical approach is no longer viable." 505 B.R at 620-21; *see also id*. at 622 ("The Panel agrees that *Lanning* was a 'game-changer' and that cases such as *Marshall*, which predate Lanning, can no longer be relied upon by above-median chapter 13 debtors[.]"). Other courts agree. *See, e.g., In re Garrepy*, 501 B.R. 13, 16 (Bankr. D. Mass. 2013) ("Post-BAPCPA, a court may deviate from the amount reflected in a debtor's [Form 122C-2] when calculating projected disposable income in 'unusual cases' where a debtor presents 'known or virtually certain information about . . . future income or expenses.'") (quoting *Lanning*, 5601 U.S. at 519); *In re Henderson*, 455 B.R. 202, 208 (Bankr. D. Idaho 2011) ("Because the Supreme Court adopted the forward-looking approach, as opposed to the *Kagenveama*-favored mechanical approach, *Kagenveama*'s instructions to bankruptcy courts for calculating debtors' projected disposable income were effectively overruled."). Indeed, in specifically referencing the *Kagenveama* decision, *Lanning* itself states that "arguments advanced in favor of the mechanical approach are unpersuasive." *Lanning*, 560 U.S. at 519.

The different purpose of § 707(b)(2)(A)(iii)(I) in chapter 7 and chapter 13 cases provides additional support for the Court's conclusion. In a chapter 7 case, the contractual

15

payments in existence as of the petition date are used in determining eligibility to be a chapter 7 debtor. Chapter 7 takes a snapshot of income and expenses on the petition date, albeit calculated based on a six-month lookback. So, in determining whether there is a presumption of bad faith in a debtor's chapter 7 petition under § 707(b)(2)(A), it makes sense to look at the actual secured debt payments in existence on the petition date. In a chapter 13 case, the policy arguments (plus *Lanning*) support focusing on actual expenses in existence on the confirmation date. *In re Hoss*, 392 B.R. at 469-70; *In re McPherson*, 350 B.R. at 46-47. Stated another way, Congress has essentially said that debtors earning too much income compared to their expenses in existence as of the petition date do not belong in chapter 7. By contrast, Congress has essentially said that debtors who file chapter 13 cases must pay their unsecured creditors what they can afford to pay upon confirmation of a plan.

In sum, the Court concludes that above-median chapter 13 debtors who intend to retain collateral, but have reduced the amount of the claim secured by said collateral in their plan, may only deduct as § 707(b)(2)(A)(iii)(I) secured debt payments on Form 122C-2 the greater of the IRS Local Standard[5] and the actual amount the secured creditor will be paid under the plan. They may not deduct the prepetition contract amount. Moreover, even if the higher prepetition contractual payment may be used in Form 122C-2 in calculating "disposable income," that amount may not be used in determining "projected disposable income" under § 1325(b)(1) when, as here, *Lanning* compels the Court to adopt a forward-looking approach.

---

[5] A debtor's right to use the IRS Local Standard deduction is discussed in the next section of this Order.

16

**The Debtor May Deduct the Greater of His
Plan Payment and the IRS Standard Deduction**

Under the Court's analysis so far, the Debtor's average monthly payment for each vehicle on lines 13b and 13e on Form 122C-2 is limited to the Debtor's proposed plan payments, namely $556.90 for the Cadillac and $388.99 for Ford. But the road trip does not end there. Now we must navigate through other line items on Form 122C-2 and the arithmetic instructions in the form. Line 13a of Form 122C-2 currently provides a monthly deduction of $588 for "Ownership or leasing costs using IRS Local Standard." Line 13c provides a calculation of net vehicle ownership or leasing expense by subtracting line 13b (average monthly payment for all debts secured by the claimed vehicle) from line 13a (IRS Local Standard). This means that, assuming the IRS Local Standard is higher than the average monthly payment, a debtor may include in line 13c the difference between the IRS Local Standard and the average monthly payments. Then, in lines 33b and 33c of Form 122C-2, a debtor is permitted to deduct the lower monthly payments as proposed in a plan. The net result is that a debtor gets the benefit of the full IRS Local Standard deduction if his average monthly payments under a plan (line 13b) is lower than the IRS Local Standard in line 13a. The plan language of § 707(b)(2)(A)(ii)(I) dictates this conclusion. *Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017) ("Based on the plain language of the statute [*i.e.*, § 707(b)(2)(A)(ii)(I)], we hold that a debtor is entitled to deduct the full National and Local Standard amounts even if they have actual expenses below the standard amounts."). As applied here, in calculating projected disposable income,

17

the Debtor may deduct $588 per month for each vehicle, since the IRS Local Standard is greater than his actual monthly payments proposed in the Plan.[6]

### Even if the Prepetition Contract Amounts are Allowable, the Debtor Has Overstated the Amounts in His Form 122C-2

As discussed above, the Court concludes that the Debtor may only list the greater of the IRS Local Standard per vehicle (currently $588 per vehicle) and his actual monthly payments per vehicle proposed in the Plan. However, even if the Court's conclusion is wrong and the prepetition contract amounts must be used, the expenses claimed in the Debtor's Form 122C-2 are miscalculated. Section 707(b)(2)(A)(iii)(I) states that the average monthly payment is calculated as the total of all amounts that will be contractually due during the life of the 60-month plan divided by 60.[7]

As of the Petition Date, the Debtor had 48 payments left on the Cadillac loan. So, even if the contract rate of $1,194.68 per month is used, the proper calculation of average monthly payments in line 13b of Form 122C-2 is not $1,200 per month (the rounded prepetition monthly payment). That amount is wrong because, on the Petition Date, only 48 monthly payments remained on the Cadillac loan. Therefore, the proper calculation would be 48 x $1,194.68 which equals $57,344.64 (the total contract amount coming due during the life of the Plan), which divided by 60 equals $955.74 per month. That calculation error would increase the Debtor's projected disposable income by $238.94

---

[6] The Trustee argued alternatively that the Debtor should be limited to his actual payments under the Plan, even if these amounts are less than the IRS Local Standard. The Court disagrees and finds that this result would be unfair. If a debtor whose contractual loan payment is less than the IRS Local Standard can use the higher IRS Local Standard, so too should a debtor, like the Debtor here, whose plan payments are less than the IRS Local Standard.

[7] Section 707(b)(2)(A)(iii)(II) also allows a further monthly deduction for other expenses necessary to maintain possession. That amount, if any, is not addressed in the Court's analysis since the Debtor is proposing to pay the total secured debt in the Plan.

per month, even if the prepetition contract amounts were used ($1,194.68 - $955.74 = $238.94).

As of the Petition Date, the Debtor had 20 payments of $832.75 left on the Ford loan. Like the Cadillac, the Debtor has used the wrong number in line 13e, even if the prepetition contractual payment is used. The Debtor's Form 122C-2 lists $832.00 (the rounded prepetition monthly payment) for the Ford, but only 20 payments remain due following the Petition Date. Therefore, the proper calculation would be 20 x $832.75 which equals $16,655 (the total contract amount coming due during the life of the Plan), which divided by 60 equals $<u>277.58</u> per month. However, as discussed earlier, because Form 122C-2 allows the greater of the IRS Local Standard and the average monthly payment proposed in the Plan, the Debtor, under this scenario, would be able to deduct the IRS Local Standard of $588 per month for the Ford.

To be clear, this Order is limiting the Debtor to the greater of his actual plan payments and the IRS Local Standard deduction. The purpose of this section is to note, in *dicta*, that the Debtor's currently filed Form 122C-2 is wrong, even if the Debtor is permitted to deduct monthly vehicle expenses on Form 122 C-2 using the amounts in the prepetition contracts.

## **Conclusion**

The road has been bumpy, but the Court has arrived at its destination with a result reached by several courts and strongly supported, if not compelled, by the Supreme Court's decision in *Lanning*. Moreover, this result implements the intent and purpose of chapter 13. In sum, for a vehicle loan outstanding on the petition date, a chapter 13 debtor may deduct the greater of his or her actual monthly plan payment for the vehicle

19

and the IRS Local Standard deduction, presently at $588 per month.  For the foregoing reasons, the Court **ORDERS** as follows:

1. The Trustee's objection to confirmation is sustained, as provided herein, and the Court denies confirmation of the Fourth Amended Plan.

2. No later than 21 days from the entry of this Order, the Debtor must file a fifth amended plan providing increased payments to his general unsecured creditors based upon the increase in his projected disposable income arising from the reduced vehicle expenses allowed by this Order.

###

Copies to:

Michael A. Frank, Esq.
Law Offices of Michael A. Frank and Rodolfo H. De La Guardia, Jr.
2000 NW 89th Place, Suite 201
Doral, Florida 33172
(Counsel for Debtor)

Nancy K. Neidich, Esq.
Standing Chapter 13 Trustee
P.O. Box 279806
Miramar, Florida 33027